FT. WORTH & D. C. RY. CO. v. BROOM-
HEAD et al.

(Court of Civil Appeals of Texas. San Antonio. Nov. 1, 1911. Rehearing Denied Nov. 22, 1911.)

1. RAILROADS (§ 398*)—DEATH OF TRESPASSER
—EVIDENCE.

In an action against a railroad company for death of a trespasser on the track, evidence *held* to warrant a finding that the operatives of defendant's train that struck deceased saw him on or near the track in a position of danger, and that no warning was given or effort made to stop the train or to prevent the accident until it was too late, that the place where deceased was walking was frequented by the public as a passageway to the knowledge of defendant, and that the train was running at a high rate of speed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1356–1363; Dec. Dig. § 398.*]

2. RAILROADS (§ 376*)—PERSONS ON TRACK—
TRESPASSERS—DUTY OF TRAIN OPERATIVES.

That decedent was a trespasser when he was killed while walking on or along the side of defendant's railroad track did not relieve defendant's employés of the duty of keeping a lookout along the track, and taking steps, on discovering decedent's peril, to avoid injuring him.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1275–1279; Dec. Dig. § 376.*]

3. RAILROADS (§ 401*)—PERSONS ON TRACK—
DEFENSES—ASSUMED RISK.

Where a trespasser on defendant's railroad track was killed by a train approaching him

from the rear, a request to charge that if there was a pathway or public road known to decedent which he could have traveled with convenience, beyond reach of the train, and he voluntarily chose the dangerous way, he assumed the risk, was fatally defective, since the doctrine of assumed risk as distinguished from contributory negligence was not involved.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1382–1390; Dec. Dig. § 401.*]

4. TRIAL (§ 191*)—INSTRUCTIONS ASSUMING
FACTS—CONTRIBUTORY NEGLIGENCE.

Where decedent was killed by a train approaching him from the rear as he was walking on or very close to defendant's track, along a way habitually used by pedestrians, an instruction assuming that if he could have chosen a different path which would have been safe, and, instead, he chose to walk along the railroad, he was guilty of contributory negligence, was erroneous; the question of his negligence under such circumstances being one for the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431; Dec. Dig. § 191.*]

5. RAILROADS (§ 400*)—PERSONS ON TRACK—
DEATH—CONTRIBUTORY NEGLIGENCE.

Decedent was killed while walking along a railroad track in a path habitually used by pedestrians by being struck by a train approaching from the rear, without signal or warning. The crew by the use of reasonable care could have prevented the accident, but took no steps to do so. *Held*, that decedent was not negligent as a matter of law.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. § 400.*]

6. RAILROADS (§ 398*)—PERSONS ON OR NEAR
TRACK—DEATH—PROXIMATE CAUSE.

Deceased was killed while walking along or near defendant's track in the daytime at a place where he could have been seen for a mile by the crew of defendant's train, approaching him from the rear. No warning was given, and it did not appear that deceased had any knowledge of the approach of the train before he was struck. *Held* to warrant a finding that, though decedent was negligent in walking along the track, the negligence of the defendant was the direct and proximate cause of his death.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1356–1363; Dec. Dig. § 398.*]

Appeal from District Court, Hartley County; D. B. Hill, Judge.

Action by Clara Broomhead and others against the Ft. Worth & Denver City Railway Company. From a judgment for plaintiffs against the Ft. Worth & Denver City Railway Company alone, it appeals. Affirmed.

Spoonts, Thompson & Barwise, Hyde & Braly, and J. M. Chambers, for appellant. Tatum & Tatum, Perry J. Lewis, H. C. Carter, and Carden, Starling, Carden & Hemphill, for appellees.

FLY, J. Clara Broomhead, for herself and as the next friend and guardian of her seven minor children, Harry, Emma, Ernest, Clarence, Frank, Phil, and Mary, sued appellant and the Chicago, Rock Island & Gulf Railway Company for damages accruing from the death of Alfred Broomhead, the

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

husband of Clara Broomhead and the father of her children, alleging that the husband and father was killed through the negligence of appellant and its codefendant in striking him with one of their trains and crushing his skull. The jury returned a verdict in favor of the Chicago, Rock Island & Gulf Railway Company, and against appellant for $10,000, divided as follows: "Clara Broomhead $3,000 and $1,000 to each of the seven children." There were some other parties plaintiff whom it is unnecessary to mention, as they recovered nothing, and no one has complained.

The facts are these: On December 25, 1908, about 1:40 o'clock p. m., the body of Alfred Broomhead was taken up by the crew of a freight train belonging to appellant from a position occupied by it near the railroad track, and was placed in the caboose, and the train was backed to Hartley, a station on the road, where the body was placed in the baggage car of a passenger train, and was carried therein to Channing, 15 miles distant. When the body was found near the track, the man was alive, but unconscious, and the back of his skull was crushed. He died about the time he reached Channing. It was shown that a blow on the back of the head like that received by Alfred Broomhead would paralyze him, and would result in death in an hour or an hour and a half, and that he would not be able to move after receiving the blow, and, if a train moving at the rate of 30 or 40 miles an hour inflicted the blow, it is not probable that any blood stains would show on the train or engine, as it would take the blood a few seconds to start. Blood was found on the west end of a cross-tie in quantity sufficient to run off on the ground, and saturate it to a depth of about half an inch. The track runs nearly north and south at the point where the body was found. On the day in question, between 1 and 2 o'clock p. m., a freight train belonging to appellant, going south, passed at a high rate of speed by Hartley, and stopped at or near the place where the body was found, and it was picked up by the train crew. On that day, a few minutes before the freight train came along the road, Alfred Broomhead was seen walking south along the railway track. The train was going south. Alfred Broomhead was not under the influence of intoxicating liquors. Broomhead, while walking along the track, could have been seen for a mile in either direction from Hartley. The employés of appellant testified that they saw Alfred Broomhead lying with his body off the track, but with his head on the end of a cross-tie. He was from 360 to 370 feet distant when first seen, and yet the train ran up hill from 340 to 350 feet beyond the body before it stopped. The engineer swore that he passed Hartley, which was not a great distance from where the body was found, at 1:40 o'clock p. m. The train was running at a high rate of speed at the time.

[1] There was evidence tending to show that the whistle was not sounded nor the bell rung when deceased was seen by the engineer. The jury was justified by the evidence in finding that the employés of appellant saw Alfred Broomhead on or near the track, in a position of danger, and that no warning was given him and no effort made to stop the train until it was so close to him that it could not be stopped. The evidence was sufficient to show that the track at the place where Alfred Broomhead was killed was habitually used by the public as a passageway, and that the employés of appellant were chargeable with a knowledge of such use. The evidence showed that the train was being run at a high rate of speed, and that, if the employés did not see the deceased on or in dangerous proximity to the track for more than half a mile before he was struck, it was because they did not attempt to notice what was on or near the track. The emergency brakes were not applied to the train. The only other train that passed over the railway track at any time near the time at which the body was found passed about 12 o'clock noon, and deceased was seen walking on the track long after that train had passed and just before appellant's freight train passed along the track.

Alfred Broomhead was alive and walking along the track a few minutes before he was taken up in a dying condition from beside the track. No other reasonable hypothesis can be indulged in than that he was killed by a train, and the facts exclude any reasonable theory except that he was killed by the train of appellant between 1:30 and 2 o'clock p. m. No one was in proximity to him when he was last seen, and the wounds, position of the body, the fact that a train rapidly running passed about that time, all taken together, point to but one conclusion, and that is that Alfred Broomhead came to his death by reason of wounds inflicted upon his person by the train of appellant. Reason and common sense exclude any other possible cause of the death, and the only question presented is, Was appellant guilty of negligence in causing his death? The facts point indubitably to that conclusion.

[2] The evidence shows that deceased was a trespasser upon the track of appellant, as trespasser is defined in Railway v. Shiflet, 98 Tex. 326, 83 S. W. 677, but tends to show that he was at a place on or near the track which was habitually used by pedestrians, and that the use was such as to charge appellant with notice of such use. If it be true, however, that deceased was a trespasser upon the track of appellant, that fact did not relieve appellant of the duty of keeping a lookout on its track, and give license to its employés to shut their eyes to objects

on the track and to run down and kill human beings thereon, and obtain immunity from such acts by the plea that they had no right to be on the track. As said in Railway v. Weisen, 65 Tex. 443: "A man does not forfeit his life or his right to remain whole by going where he has no right to go or being where he has no business." The fact that a person may without authority enter upon a railroad track does not relieve railroad companies of the duty devolving on them, in the operation of their dangerous agencies, of being watchful for men or beasts upon the tracks, but they will be held to owe the duty at all times when a train is in motion, at all points along their highways, to keep a reasonable outlook, and to exercise reasonable care to prevent injury to any one on the track. As said by Justice Gould in Railway v. Sympkins, 54 Tex. 615, 38 Am. Rep. 632: "If the engineer on the approaching train keep that lookout which is required of him at all times, not only to secure the safety. of the train, but to avoid injury to any animal or person on the track, this person lying there in open view must be discovered. Not to discover is, under the circumstances, negligence, and that negligence is the proximate cause of the injury; whilst the negligence of the party in going on the track is only a remote cause." The Sympkins Case is quoted from and approved in the case of Railway v. Watkins, 88 Tex. 20, 29 S. W. 232, and it was said: "The true rule is that it is the duty of the servants of the railroad company operating its trains to use reasonable care and caution to discover persons on its track, and a failure to use such care and caution is negligence on the part of such company, for which it is liable in damages for an injury resulting from such negligence, unless such liability is defeated by the contributory negligence of the person injured, or of the person seeking to recover for such injury, and the circumstances under which the party injured went upon the track are merely evidence upon the issue of contributory negligence. If such circumstances show that the party injured was a wrongdoer or trespasser at the time of the injury, the issue of contributory negligence is, as a general rule, established as a matter of law; but not so in all cases. It results from the above that it was the duty of the railroad to use ordinary or reasonable care to discover and warn defendant in error whether she be considered a trespasser or a mere licensee, and a failure to use such care was negligence, rendering the railroad liable for such damages as resulted therefrom, unless under all the circumstances defendant in error was guilty of negligence contributing proximately to her injury." The Watkins Case was cited with approval in the case of Railway v. Malone, 102 Tex. 269, 115 S. W. 1158, on another point, however; but in the Malone Case it was held that the known use of a railroad track at a certain place by pedestrians placed the duty upon the railroad company of using ordinary care to discover them and of using such care to avoid injuring them. The case now being considered is in line with that ruling. But the full effect of the Malone Case is that every one walking on a railroad track is a trespasser, and the railroad company owes him no duty unless persons have been in the habit of using the track as a passway to such an extent as to require the railroad company to keep a lookout for persons. The writer of this opinion, however, does not subscribe to any such doctrine, but thinks that the rule as stated in the Sympkins and Watkins Cases is founded upon the true principle of protection to human life by requiring an outlook at all times in all places for any animal or person on the track. This rule is the only safe one, not only so far as those walking on the track are concerned, but in connection with those riding on the train which might be derailed by a man or horse on the track. As said by Judge Gould: "We prefer that line of decisions holding railroads bound to exercise their dangerous business with due care to avoid injury to others as correct in principle and sound in policy, and as protecting even a trespasser who is not guilty of contributory negligence." The question in that case was, and should be in every like case, Was reasonable care exercised in discovering the trespasser or licensee on the track, regardless of whether people were in the habit of using the track for a passageway or not? The facts in this case bring it even within the bounds of the contracted and restricted view of the duty owed by railroad companies held by the Supreme Court in the Malone Case.

Under the definition given of a trespasser in the case of Railway v. Shiflet, 98 Tex. 326, 83 S. W. 677, deceased was a trespasser, for it seems that every one on a railroad track is a trespasser who has no express or implied permission to use the track, and that permission will not be implied from habitual use of the track which is known to the employés. But the fact of the habitual use, it seems from that decision, places on the railroad company the duty of watching out for people at places on the track that are so habitually used. This saving clause made it the duty of appellant to keep a lookout for people at the place where Alfred Broomhead was killed, and sustains the charge of the court as to the duty devolving upon appellant if the jury found such habitual use of the track.

The following admirable charge given by the court follows the opinion in the Malone Case, and is supported by the facts: "If you believe from the evidence that Alfred Broomhead was struck and injured on December 25, 1908, by an engine of the defend-

ant, Ft. Worth & Denver City Railway Company, while walking or standing on or near its track, near Hartley, and if you further believe from the evidence that for a long time prior thereto that portion of the defendant's track on which the said Alfred Broomhead was traveling, if you find that he was traveling on said occasion, was and has been commonly and habitually used by the public as a pathway for travel by pedestrians with the knowledge and acquiescence of said defendant, and if you further believe from the evidence that the said Alfred Broomhead did not discover the approach of the train in time to avoid being struck by an engine, if you find that he was so struck, and if you further believe from the evidence that persons of ordinary prudence filling the respective positions of engineer and fireman on said engine would, under the same circumstances, have been on the lookout for pedestrians on said track at the place where the said Alfred Broomhead was traveling, if you find he was traveling, before he was struck, and could and would have discovered that the said Alfred Broomhead was on the track sooner than defendant's said engineer and fireman made such discovery, if any, and after making such discovery, if any, could and would have sounded signals of the bell and whistle, or either, at such time and in such manner as to warn the said Alfred Broomhead of the approach of the train in time to have enabled him to leave the track before being struck by its engine, if you find that he was so struck, then you will find that the failure of the engineer and the fireman to make such discovery, if any, and to sound such warnings, was negligence, and if you so find, and if you further believe and find that such negligence, if any, was the proximate cause of the death of the said Alfred Broomhead, then you will return a verdict in favor of the plaintiffs against the Ft. Worth & Denver City Railway Company, unless you find for it under some other paragraph of this charge." It follows that the court did not err in presenting the cause to the jury, and the first, second, and third assignments of error are overruled. The facts were sufficient to sustain the finding of the jury in response to the charge that deceased was not guilty of contributory negligence. The direct and proximate cause of the death of Alfred Broomhead was the negligence of appellant.

[3, 4] The evidence tends to show that deceased was walking along the path near the ends of the ties, with his back towards the moving train when he was struck and mortally wounded, probably by the pilot beam, which extended out over the path. The only other way in which he could have gone from Hartley to his home was by a wagon road, which was not shown to be so convenient as the path along the railroad track, and it appeared that there was a mudhole in the road that was at times almost impassable, and the railroad track was habitually used by pedestrians. In the special charge requesting the submission of the issue as to a safer way, the jury was told that, if there was a pathway or public road known to deceased which he could have traveled with convenience beyond reach of the train and he voluntarily chose the dangerous way, "then he assumed the risk incident to walking in such dangerous place, and the Ft. Worth & Denver City Railway Company cannot be held liable for his death." The charge is fatally incorrect and defective, because it instructed the jury to find that deceased had assumed a risk, when the law of assumed risk had no place in the case, contributory negligence alone being involved, and, even though it had required the jury to find that deceased was guilty of contributory negligence, the charge was erroneous in assuming that walking on or near the track was negligence. If there was a safe, convenient way in which deceased could have gone to his home, and he had chosen the more dangerous way, still, if the issue could have been raised at all, it was a question for the jury to decide as to whether a person of ordinary prudence would, under the circumstances, have chosen a different path, and whether the one chosen by him was a dangerous one. The negligence of deceased was assumed by the special charge if he walked on or near the track. The question of negligence or not is one for a jury, and there is no exception to that rule except where the facts are such that the law declares negligence.

[5] The facts in this case showing that the path in which deceased was walking was habitually used by pedestrians, that no signal or warning of the approach of the train was given, and that the train crew could by the exercise of reasonable care have prevented the disaster, the court had no right or authority to assume that deceased knew of a safer way and should have taken it, or, in other words, that he was guilty of contributory negligence. That is what the special charge presented by appellant sought to have the court do. The charge in the case of Railway v. Wall, 102 Tex. 362, 116 S. W. 1140, is quite different from the one asked by appellant, for it left the question of negligence to be determined by the jury. The court held in that case that the question of whether a person was guilty of negligence in walking in the place that he did when there was a safe place near was for the jury to determine. Knowledge of the deceased of the danger of using the path and of the existence of a safer one were questions for the jury. It is so held in Railway v. Samuels (Sup.) 123 S. W. 121, and, further, that the test would be the action of an ordinarily careful and prudent person under

like circumstances. The rule applicable in such cases is thus stated in Railway v. Harris (Sup.) 128 S. W. 897: "If, as we have already said, the evidence actually adduced whether that of one or of both the parties admits of but one rational view, and that is that plaintiff has been guilty of contributory negligence, the court should end the case by deciding or instructing against him. But, if the evidence is such as to require the submission of that question at all, the fact that some or all of it may come from plaintiff does not alter the rule of law as to burden of proof. It is still incumbent on the party who makes the charge to maintain it throughout by making the evidence preponderate in his favor."

We might have pretermitted the foregoing discussion of the special charge, for the reason that we are of the opinion that the question of choosing a safer pathway has no place whatever in this case.

[6] Deceased was walking along or near the track, in the daytime, at a place where he could have been seen for a mile by the crew of appellant's train; and, regardless of whether he ought not to have been on the track or near it, the only question is, Did appellant's employés exercise reasonable care in discovering deceased upon the track in time to prevent injuring him? It may be that Alfred Broomhead was a trespasser, that he should not have been on or near the track, and should have gone along the public road, but that did not relieve the railroad company of its duty towards him, and license it to run over and kill him. The jury under the circumstances was justified in finding that, although Alfred Broomhead was guilty of negligence in walking along the track, the negligence of appellant was the direct and proximate cause of his death.

The charge complained of in the eighth assignment of error does not assume that the signals were not given, but leaves that question to the jury, as is clear when the paragraph is read in connection with one that follows, in which the jury were instructed that unless they found, among other things, that appellant was negligent in not giving other warnings than those that the jury believed were sounded, they should find for appellant. The only proof of a whistle being sounded or bell being rung was the testimony of the engineer that at the time he first saw deceased he gave the road crossing signal. Even according to appellant's evidence no other signal was given, and no adequate attempt was made to stop the train. A charge almost identical in terms with the one criticised in this case was given in the case of Railway v. Longino, 118 S. W. 200, and 126 S. W. 8, the judgment in which was affirmed by both the Court of Civil Appeals of the Second District and the Supreme Court. We think the attack on the charge is hypercritical and without merit.

None of the assignments of error is well taken and the judgment is affirmed.