SAN ANTONIO & A. P. RY. CO. v. JARA-
MILLA. (No. 5520.)

(Court of Civil Appeals of Texas. San An-
tonio. Nov. 24, 1915. Rehearing De-
nied Dec. 24, 1915.)

1. RAILROADS ☞398 — INTOXICATED TRES-
PASSER—DISCOVERED PERIL—NEGLIGENCE —
SUFFICIENCY OF EVIDENCE.

Evidence in an action for the death of an
intoxicated trespasser from being run over by a
train while he was lying on the track within the
limits of a village at a place where the track
was habitually used as a foot path *held* to show
that the operatives of defendant's locomotive
were willfully and wantonly negligent in fail-
ing to use the proper means to avert danger to
deceased after discovering his position of peril.

[Ed. Note.—For other cases, see Railroads,
Cent.Dig. §§ 1356, 1358–1363; Dec.Dig. ☞398.]

2. RAILROADS ☞376 — INTOXICATED TRES-
PASSER—DUTY TO KEEP LOOKOUT.

A railroad company owes the duty as to a
drunken trespasser lying on the track within
the limits of a village at a place where the
track is commonly used as a footpath to keep
a reasonable lookout on its locomotives.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. §§ 1275–1279; Dec. Dig. ☞376.]

3. RAILROADS ☞376 — INTOXICATED TRES-
PASSER—DISCOVERED PERIL.

The duty of the operatives of a locomotive
to use reasonable care to avoid injury after
discovering the presence of a trespasser lying
on the track is not destroyed or weakened by
the fact that the trespasser is drunk.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. §§ 1275–1279; Dec. Dig. ☞376.]

4. TRIAL ☞351 — REFUSAL OF SPECIAL IS-
SUE.

The refusal of a special issue on a matter
presented by the court was not error.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 829, 834–839; Dec. Dig. ☞351.]

5. APPEAL AND ERROR ☞1062 — HARMLESS
ERROR—SUBMISSION OF ISSUES.

In an action for the death of an intoxi-
cated trespasser from being run over by a train
while he was lying on the track within the lim-
its of a village, the submission of the issue
whether the operatives of the locomotive were
negligent in failing to keep a lookout while run-
ning through the village, if error, was harmless,
where the jury found that sufficient effort was
not made to stop the train after the peril of de-
ceased was discovered.

[Ed. Note.—For other cases, see Appeal and Er-
ror, Cent.Dig. §§ 4212–4218; Dec.Dig. ☞1062.]

6. RAILROADS ☞351—INJURY TO TRESPASSER
—SUBMISSION OF ISSUES — DUTY TO KEEP
LOOKOUT—PASSWAY.

The issue whether the track was used as
a passway at the place of the accident was ma-
terial to the question of defendant's duty to
keep a lookout, and hence was properly sub-
mitted, though deceased was lying down when
struck by the train.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. §§ 1193–1211, 1213–1215; Dec. Dig.
☞351.]

7. APPEAL AND ERROR ☞1060 — ARGUMENT
OF COUNSEL—CURE OF ERROR—VERDICT.

Remarks of counsel which were not sup-
ported by the evidence were not prejudicial,
where they were promptly withdrawn by the
court, and the small verdict returned indicated
that the jury were not influenced thereby.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 4135; Dec. Dig. ☞1060.]

Appeal from District Court, Wilson Coun-
ty; O. A. McCracken, Special Judge.

Action by Antonia Jaramilla against the
San Antonio & Aransas Pass Railway Com-
pany. From judgment for plaintiff, defend-
ant appeals. Affirmed.

Browne Bros., of San Antonio, for appel-
lant. J. E. Canfield, of Floresville, and Di-
brell & Mosheim, of Seguin, for appellee.

FLY, C. J. This is a suit by appellee, in
her capacity as the widow of Vicente Jara-
milla, to recover damages arising from his
negligent killing by appellant. It was al-
leged that Vicente Jaramilla was a licensee
on the track of appellant a short distance
north of the town of Floresville, and while
on said track from some cause was unable
to leave the same, and unable to realize the
danger of his position, and while in such
place and condition was discovered by the
employés of appellant on an approaching
train, and was run over and killed; such
employés after discovering the peril of de-
ceased making no adequate effort to stop
the train. It was further alleged that no
warning was given of the approach of the
train. Appellant filed general and special de-
murrers, and answered that deceased, while
in a drunken condition, went upon the track
and fell asleep, "or was asleep without being
drunk, or was drunk without being asleep";
that when he was discovered on the track it
was too late, with the use of all means at
the hands of the employés, to stop the long
freight train; that it was at night; and that
the proper signals were given of the approach
of the train. The case was submitted on
special issues, all being answered in favor
of appellee, except that deceased was guilty
of contributory negligence in lying down on
the track. The damages were assessed at
$1,500, and judgment was accordingly so ren-
dered for appellee.

The jury found, and the evidence showed,
that when Vicente Jaramilla was struck by
the locomotive of appellant, he was lying
across the track; that he was discovered in
his perilous position by the employés operat-
ing the train at such a distance that the
train could have been safely stopped in time
to have avoided running over and killing de-
ceased; that the said employés did not use
all means in their power consistent with their
own safety to stop the train, and by such
failure caused the death of the husband of
appellee.

[1] It is very difficult to prove that em-
ployés operating a train saw a person on the
track; for it is an act on their part to which
they alone can definitely and directly swear.
It would be almost unimaginable for a case
to arise in which such employés would admit
that they saw a person on the track, but
failed to use all means in their power to stop
the train and prevent the disaster. To ex-

pect such testimony would be making a draft on human nature that would be unreasonable. A case of discovered peril and failure to use proper means to avert the danger to the person in the perilous position must therefore usually be proved by circumstantial evidence. The engineer testified that when he reached the top of the hill, just north of Floresville, he cut off the steam and was running on a downgrade, without steam, when he ascertained that an object on the track which he had noticed some time before was a man, and that he then threw the "brakes into emergency" and worked the said lever to get all the braking power he could. He admitted that he had testified before a justice of the peace, but had failed to testify that he ever cut off the steam, nor did he mention it on his first examination in the trial of this case. On being recalled, after W. H. Martin had testified that, "If you did not shut the steam off, it would have a tendency to keep the engine in motion until the brakes checked it down; it would be longer in stopping" he swore for the first time that he had shut off the steam at the top of the hill. It was in proof that the man was seen by the engineer at a distance of 600 to 800 feet, and the fireman swore that he first saw deceased at a distance of 300 feet, and one second after he first saw the object he knew it was a man. The train, moving at the rate of 25 miles an hour, as testified by the employés, could not have gone but little more than 36 feet, or was at a distance of more than 260 feet from the man on the track. There was testimony to the effect that the train could have been stopped in 210 to 240 feet. The train went from 550 to 600 feet, at least, from the place where the employés admitted the object was known to be a man. The grade was a moderate one of about 31 or 32 feet to the mile on a straight track. Martin swore that a man lying down on the track could be seen at a distance of 500 feet. The engineer admitted that he saw the object on the track when he was 600 or 800 feet off, but did not slacken his speed or make any attempt to stop the train until within some 200 feet of the man. The testimony of the conductor was that the air went on when the caboose was on the crossing about 1,200 to 1,500 feet from where deceased was lying at or near the middle bridge, and the engine at that time must have been from 400 to 700 feet from deceased. According to the engineer, he applied the brakes as soon as he saw the object was a man. The track was straight for a distance of about 1,400 feet from where the locomotive passed around the curve to where deceased lay, and the engineer must have seen him as soon as he passed the curve. Common prudence and ordinary care should have caused him to at least slacken the speed of his train so as to have it under control when he ascertained what the object was, especially as he was approaching a town at the rate of 25 miles an hour. However, he made no effort, according to his own account until within 200 feet of the prostrate man, to stop the train. The train went 1,000 feet before it was stopped after the brakes had been applied, which indicates that the steam had not been cut off.

There was testimony introduced by appellee which tended to show that the brakes were not applied until the locomotive was within 20 or 25 feet of where the deceased was lying. There was some testimony tending to show that the track at the point where the husband of appellee was killed had been used for several years by the public as a passageway, and that this fact was known to appellant. The road at that point was in the village of Lodi, a suburb of Floresville, and a number of families resided there. One witness testified that "they have about 200 good votes up there."

[2] The facts show that the employés on the train must have seen deceased lying on the track at such a distance that the train could have been stopped before reaching deceased, with safety to the employés and the train. The duty of keeping a lookout on the track when running through a village and when about to enter the county seat of the county rested upon appellant. Not only was the train running through a village, but along a part of the track habitually used by the public, and, under the most favorable decisions of the Supreme Court to railway companies, this habitual use placed the duty on the railway company of watching out for people at such places. Railway v. Shiflet, 98 Tex. 326, 83 S. W. 677; Railway v. Malone, 102 Tex. 269, 115 S. W. 1158. While the facts of this case bring it clearly within the purview of the cited cases, the writer does not wish to be understood as subscribing to the restricted view in those cases as to the duty of railway employés in keeping a lookout as to persons on the track. As said by this court in the case of Railway v. Broomhead, 140 S. W. 820, in which a writ of error was refused:

"The question in that case [Railway v. Sympkins, 54 Tex. 615, 38 Am. Rep. 632] was, and should be in every like case: Was reasonable care exercised in discovering the trespasser or licensee on the track, regardless of whether people were in the habit of using the track for a passageway or not?"

This principle of law was repeated by this court in the case of Railway v. Huegle, 158 S. W. 198, and the case of Broomhead was quoted from and approved. In that case a writ of error was refused by the Supreme Court, and it may be taken as the law in such cases.

The fact that deceased was a drunken trespasser upon the track of appellant did not give it license to run over and kill him. It owed the same care to the drunken trespasser as to the sober one, and the unfortunate person who becomes intoxicated and goes upon a railroad track and stands or

lies upon it is not an outlaw that may be slain by the servants of a railway company. As said in Railway v. Weisen, 65 Tex. 443:

"A man does not forfeit his life, or his right to remain whole, by going where he has no right to go, or being where he has no business."

We know of no law that would relieve a railway company of all duty to watch its track and use all reasonable means to prevent the injury of a human being discovered thereon, just because he was besotted and stupefied by intoxicating liquor. The same law applies to him as would to the unfortunate individual who might fall down in an epileptic convulsion. It is true that the drunken person is not relieved by his condition from the effects of his contributory negligence and employés of railway companies owe no higher duty to him than to the sober man, unless they are cognizant of his irresponsible condition. The same duty is owed to him as though he were sober, in the absence of knowledge of his condition. Elliott, Railroads, § 1172.

[3] It is insisted that in the case of Railway v. Sympkins, 54 Tex. 615, 38 Am. Rep. 632, that the railway company was held liable because the man fell down in a fit, and his position on the track was providential. No such doctrine was announced in that case, but it is the leading case in holding that it is the duty of a railway company to keep a lookout, and that it was negligence not to discover a man upon the track in open view of the operatives. It was further held that the presence of a man on a railroad track in a drunken condition was contributory negligence but that such negligence did not license the railroad company to wantonly or willfully kill him; in other words, the doctrine of discovered peril would not be destroyed or weakened by the drunken condition of the man on the track. The evidence in this case shows, as found by the jury, willful or wanton negligence on the part of the operatives on the locomotive. No case has gone further than to hold that the duty of keeping a lookout did not arise in the case of a drunken man on a railway track, and that the writer deems to be a cruel and barbarous doctrine. The writer, without committing the court to that ruling, believes that the duty of keeping a lookout rests upon the employés of railway companies in every city, town, or village, or other place persons are likely to enter upon the track, whether they be drunk or sober. The foregoing rulings dispose of the first, second, third, and fourth assignments of error.

[4] Special issue No. 10, the rejection of which is complained of in the fifth assignment of error, was properly refused. The same matter was presented by the court, and it was unnecessary to repeat it. The sixth, seventh, and eighth assignments are disposed of in the consideration of the first three assignments.

[5] If it be admitted that the operatives of the engine were under no obligation while running through a village and that it was not negligence for them to fail to keep such watch, the submission of such issue and the finding that the operatives were negligent in not keeping such watch could not have injured appellant, because the jury found that sufficient effort was not made to stop the train after the peril of deceased was discovered, and this finding was sufficient upon which to base the judgment of the court. This disposes of the ninth, tenth, and eleventh assignments of error.

[6] It was not error to submit the issue as to whether the track was used as a passway, even though deceased was lying down when struck, because that fact had a bearing upon whether it was the duty of appellant to keep a lookout. Constant use of the track by pedestrians, both day and night, charged appellant with notice of that fact. The twelfth and thirteenth assignments of error are overruled.

[7] The remarks of appellee's counsel complained of in the fifteenth assignment of error were not supported by the evidence, but they were promptly withdrawn from the jury by the court, and the small verdict would indicate that the jury were not influenced thereby. There is nothing to indicate that the jury understood or applied the quotation, "'Let the galled jade wince,'" as such an expression is never used in this day in regard to a soreback horse or mule whose withers are hurt by the saddle.

The sixteenth and seventeenth assignments of error are overruled.

The judgment is affirmed.

---

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes