BAKER v. LOFTIN et al. (No. 5886.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 24, 1917. Rehearing Denied Nov. 14, 1917.)

1. MASTER AND SERVANT ⬤�ðₔ276(10)—INJURIES ON TRACKS—TRESPASSER—EVIDENCE.

In an action for the death of a section foreman on the track with a motor at midnight, evidence held sufficient to sustain a finding that he was not a trespasser.

2. MASTER AND SERVANT ⬤⟐281(1)—INJURIES ON TRACK—NEGLIGENCE—EVIDENCE.

In an action for the death of a section foreman killed while on the track at midnight with a motor, evidence held sufficient to sustain a finding that he was not drunk, or lying on the track to sleep, or negligent.

3. MASTER AND SERVANT ⬤⟐278(18)—PERSONS ON TRACK — NEGLIGENCE — SUFFICIENCY OF EVIDENCE.

In an action for death of a section man on track with a motor at midnight, evidence held sufficient to sustain a finding that the track was not so curved that the headlight did not show deceased, and that the trainmen should have seen deceased or his lantern in time to stop.

4. MASTER AND SERVANT ⬤⟐285(11), 289(39)—PERSONS ON TRACK — NEGLIGENCE — PROXIMATE CAUSE.

In an action for death of a section man on the track at midnight with a motor, whether negligence of the deceased or of the railroad was the proximate cause of the death held a question for the jury.

5. MASTER AND SERVANT ⬤⟐289(1)—PERSONS ON TRACK — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE—STANDARD OF CARE.

The question whether section foreman killed on a railroad track was in the exercise of such due care as would be expected of a reasonably prudent and careful person, under similar circumstances, is no more a question of law for the court than the question of negligence on the part of the railroad.

6. EVIDENCE ⬤⟐150 — EXPERIMENTS — LIGHT ON TRACK.

In an action for death of person on a track at night, evidence of experiments made under similar conditions, for the purpose of demonstrating that the headlight of an engine did not leave the track in darkness because of a curved track, was admissible.

7. MASTER AND SERVANT ⬤⟐291(3)—PERSONS ON TRACK—PLEADING—ISSUES.

A complaint in an action for death of section foreman, alleging that deceased was rightfully upon the track with motorcar in the night, justified an instruction suggesting that deceased "was on the motorcar, or standing or lying down near."

8. MASTER AND SERVANT ⬤⟐286(31)—PERSONS ON TRACK—EVIDENCE—INSTRUCTIONS.

In an action for death of section foreman on track, evidence held to warrant a submission of the question as to habitual use of the track as bearing on duty to keep a lookout for persons on the track.

9. TRIAL ⬤⟐296(4, 5)—NEGLIGENCE—INSTRUCTIONS.

A portion of a charge in a negligence case that omitted the duty of injured person to use ordinary care to avoid injury, was not error, where the charge in another paragraph correctly stated the ordinary care required of him.

10. RAILROADS ⬤⟐369(4)—PERSONS ON TRACK—TRESPASSERS.

It is the duty of a railroad to exercise care not to kill a trespasser or a drunken person.

11. MASTER AND SERVANT ⬤⟐247(1) — RAILROADS — DISOBEDIENCE OF RULES — NEGLIGENCE.

If a railroad's engine was operated negligently and this negligence was the proximate cause of the death of a section foreman on the track with a motorcar, the railroad is liable, notwithstanding negligence of the foreman in being where he was.

Appeal from District Court, Brazos County; J. C. Scott, Judge.

Suit by Smithie Loftin, for herself and minor children, against Jas. A. Baker, receiver of the International & Great Northern Railway Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Doremus, Butler & Henderson, of Bryan, and Wilson, Dabney & King, of Houston, for appellant. Lamar Bethea and W. C. Davis, both of Bryan, and Ward & Bickett, of San Antonio, for appellees.

---

⬤⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

SWEARINGEN, J. Appellee, Smithie Loftin, widow of Charlie Loftin, for herself and as next friend and guardian of their two minor children, brought this suit against the appellant, acting receiver of the International & Great Northern Railway Company, to recover damages for the death of Charlie Loftin by the alleged negligence of appellant. Appellees' first amended petition alleged as the cause of action that Charlie Loftin was in the employ of appellant as foreman of the section of appellant's track where the injury occurred; that deceased was, by virtue of the duties of his employment, rightfully upon the track at the time, place, and manner when killed; that it was appellant's negligence that proximately caused the injury, because the operatives of appellant's train discovered the peril of deceased in time to have avoided the injury by the exercise of ordinary care, or if the peril was not actually discovered, yet the proximate cause of the injury was the negligence of appellant's train operatives in failing to exercise that ordinary care to look out and discover the position on the track which the circumstances required of appellant. Appellant excepted to the sufficiency of the first amended petition, both generally and specially, generally denied appellees' allegations, and specially answered that appellant was guilty of no negligence, but that deceased suffered the injury by reason of his own contributory negligence. The foregoing statement of the pleadings is intended to briefly outline the salient issues pleaded which will be considered by us with reference to the application thereto of the evidence by the jury and by the court in its charges. The case was submitted in a general charge, supplemented by specially requested instructions. Upon a verdict in favor of appellee judgment was rendered for $8,000.

The testimony developed the following facts: Charlie Loftin was a section foreman in the employ of appellant, and lived in appellant's section house at Fountain switch, which is about seven miles in a northern direction from Bryan, Tex., and about one mile north of the bridge near which deceased was killed at the time alleged, by appellant's engine. Appellant furnished deceased with a motorcar to be used and operated by deceased on appellant's railroad track, subject to several rules known to deceased. Deceased employed laborers in the work required of him as section foreman. On Saturday, July 1, 1916, deceased, with his nephew and two Mexican laborers were busy performing their duties for appellant on the section until 5 o'clock p. m., after which time all four went on the motorcar from the section house at Fountain switch for the purpose, among other things, of getting money for the Mexican laborers. After arrival in Bryan, the Mexicans bought provisions, and about 9:30 p. m. all the party, boss, nephew, and laborers, mounted the motorcar to return from Bryan to the section house at Fountain switch. While in Bryan deceased and his nephew drank four of five glasses of beer each. When the party left Bryan, deceased had several bottles of beer and a 25 cent bottle of whisky with him. Deceased operated the motorcar. After traveling about five miles from Bryan, the car stopped at Thompson Creek crossing, which was about two miles from the section house at Fountain switch, and about one mile south of the scene of the killing. Here the entire party dismounted from the motorcar and remained nearly 2½ hours. The Mexicans mounted the motor first, deceased became angry with them and required them to get off. Then deceased attempted to force them to get back on, but the Mexicans ran off along the railroad track in the direction of the section house. Deceased took his position on the motorcar and told his nephew to shove the car off, which he did. Deceased was angry with the nephew, and forced him to get off the motor while in motion. There was a lighted lantern on the frame of the motorcar visible from the rear of the motorcar. The motor was heard popping, by the nephew, as it went for quite a distance. The nephew made his way to the section house across the fields, where he secured a lantern for the purpose of returning to meet his uncle, but did not do so. The motor stopped near a bridge about 1,200 feet north from the Smetana Railroad crossing, a public crossing. The lighted lantern on the motor was seen burning at 12 o'clock, midnight, at this point by a party of boys and girls, who also heard a man singing in the neighborhood of the lantern. The light was visible from the Smetana crossing, and was seen by the group of boys and girls from distances of 200 to 500 yards, and seemed to be on the railroad track, near the railroad bridge. One of the girls saw the light from the lantern until the engine of the north-bound passenger train extinguished the lantern light, wrecked the motorcar, and killed the deceased. Smetana crossing was more than 1,200 feet south of the place of the injury, and the train operatives had an unobstructed view of the track ahead from the Smetana crossing to the place of injury. No warning of any kind was given of the approach of this north-bound train.

There was testimony for appellant that the admitted 2 per cent. curve in the track, beginning just south of Smetana crossing and extending to a point beyond the place of injury, rendered it impossible for the engineer and fireman to discover the presence of deceased or the motorcar in time to avoid the injury. The testimony was that the headlight, because of the curved track, shone to the left of the track at the scene of

the killing and left the place of injury in darkness until the engine was within less than 100 feet of the deceased, and that the train could not be stopped in less than 600 feet. Contradicting this testimony, there was evidence that the headlight of the engine enveloped the track, where deceased was killed in a bright light, from the time the train reached Smetana crossing continuously as the engine approached the place of injury, and that deceased and the motorcar were clearly visible to the operating engineer and fireman continuously from Smetana crossing to the place of injury. According to appellant's witnesses, the headlight was a narrow beam. According to appellee's the headlight was very wide. The evidence was undisputed that a light from a lantern on the top of the frame of the motorcar on the track at the place of the injury could be seen by the engineer and fireman as far back as the Smetana crossing, more than 1,200 feet away, and continuously from the Smetana crossing to the place of injury. The engineer and fireman both testified that there was no light from a lantern on the motor during the time the engine reached Smetana crossing and approached the place of the injury.

The jury could, and probably did, find from the evidence that the engine headlight sufficiently illuminated the place of the injury in a way to give the engineer ample time to have avoided the injury, and that the lantern light did shine a warning of the danger of deceased, which warning signal should have been observed by the engineer, and the injury avoided.

The fireman testified that he discovered the deceased lying at right angles to the track, with his head on the left rail; that this discovery was made when the engine was about 30 feet from deceased, and could not have been discovered sooner or further away because of the failure of the headlight to illuminate the curved track. The fireman further testified that he gave an immediate warning to the engineer of his discovery, and that the engineer brought the engine to a stop 675 feet beyond the place of the injury. According to the testimony of the engineer and fireman, the engineer saw the motorcar about the same moment that the fireman first saw the deceased; and the engineer did not discover the deceased, nor the fireman the motorcar until after the killing. The location of the body and groceries tends to prove that deceased was on the motorcar where last seen by the nephew. The evidence fails to explain why the deceased stopped at the place of the injury. or why he remained there until hit. There was evidence that he may have been drunk. There was evidence that the motorcar may have gotten out of order. There was evidence that the motorcar was partially off the track before it was struck by the engine. Whether

it had become derailed or had gotten out of order and stopped, and deceased was trying to clear the track by removing it is not explained.

Deceased was an experienced section foreman, having worked for appellant in that capacity for about 9 years. He was 52 years old, strong and active.

The railroad track between Smetana and Fountain switch was habitually used night and day by the general public.

The engineer testified that it was his duty to keep a lookout to avoid injuring persons between Smetana crossing and Fountain switch.

[1-5] By the first assignment of error it is insisted that the trial court erred by refusing to instruct the jury to return a verdict for appellant. The reasons given by appellant are: That the evidence conclusively shows that deceased was a trespasser, and that appellant owed him no duty to keep a lookout; that deceased's peril was not discovered in time to have avoided the injury; that the proximate cause of the injury was deceased's own negligence. With the opinions in the Shiflet, Malone, and Matthews Cases before us, we have carefully examined the merits of this assignment, and have reached the conclusion that the court did not err as assigned. St. Louis & S. W. Ry. Co. of Tex. v. Shiflet, 98 Tex. 326, 83 S. W. 677; St. L. & S. W. Ry. Co. of Tex. v. Shiflet, 94 Tex. 131, 58 S. W. 945; M., K. & T. Ry. Co. of Tex. v. Malone, 102 Tex. 269, 115 S. W. 1158. The evidence in the case at bar was sufficient to require the court to submit to the jury the issues assumed by appellant, viz.: Was deceased guilty of negligence? Was appellant guilty of negligence? Which negligence was the proximate cause of the injury, in the event both were negligent? Appellant contends that the court should find as a matter of law that deceased was guilty of negligence, because he was a trespasser; because he was drunk; because he laid down to sleep in a dangerous position. The testimony in this case made all three of the above issues questions of fact for the jury, and will sustain a finding in favor of appellees on all of them. It will sustain a finding that deceased was licensed by the appellant to use the track as he did, that deceased was not drunk, and that he was in the act of clearing the track after flagging the approaching train with a lighted lantern. The evidence will also sustain a finding of the jury that it was the duty of appellant's engineer and fireman to keep a lookout, and that if this duty had been performed by both or either, the peril could have been avoided, for the engine light was sufficient to have disclosed the danger in time to have avoided the injury, and the lantern light on the motorcar was also a sufficient warning. Whether or not the negligence of the appellant was the proximate cause of the injury, even though deceased were negli-

gent, was also an issue to be, and was, determined by the jury. The determination of what was such contributory negligence on the part of the deceased as would defeat this action, or perhaps, more accurately speaking, the question of whether the deceased, at the time of the fatal accident, was, under all the circumstances of the case, in the exercise of such due care and diligence as would be expected of a reasonably prudent and careful person, under similar circumstances, was no more a question of law for the court than was the question of negligence on the part of the defendant. There is no more of an absolute standard of ordinary care and diligence in the one instance than in the other. Grand Trunk R. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Ft. W. & D. C. Ry. Co. v. Broomhead, 140 S. W. 820–824; Railway v. Matthews, 32 Tex. Civ. App. 137, 73 S. W. 413, 74 S. W. 803; Railway v. Matthews, 100 Tex. 63, 93 S. W. 1068; Brown v. Sullivan, 71 Tex. 475, 10 S. W. 288; Tex. & Pac. Ry. Co. v. Watkins, 88 Tex. 20, 29 S. W. 232; St. L. & T. Ry. Co. v. Crosnoe, 72 Tex. 79, 10 S. W. 342; S. A. & A. P. Ry. Co. v. Jaramilla, 180 S. W. 1126. The first assignment is overruled.

[6] The second, third, fourth, fifth, sixth, and seventh assignments assert that the trial court erred, in admitting testimony, over objection, of several witnesses who testified to experiments made for the purpose of demonstrating that the headlight of an engine did not leave the track in darkness because of the curved track, but did light the track sufficiently for the engineer and fireman to discover the peril of deceased in time to have avoided the injury. The experiment was substantially similar to conditions surrounding the injury, and its weight and credibility were for the jury. The evidence was properly admitted. The assignments are overruled.

[7] The eighth assignment complains of that portion of the charge which suggests that deceased "was on the motorcar, or standing or lying down near," because there was neither pleading nor evidence to support it. The pleading and evidence justify the language of the charge. The eighth assignment is overruled, and the ninth, which presents a similar question, is also overruled.

[8] By the tenth assignment that portion of the court's charge is attacked which instructs the jury that if it believed from the evidence that the portion of the track where the injury occurred was and had been commonly and habitually used by the public as a pathway by night, with the knowledge and acquiescence of appellant, etc. The propositions are that the evidence wholly fails to support such a charge. A number of witnesses testified that that portion of the track was commonly and habitually used by the public as a pathway for travel by pedestrians by night. This was not contradicted by any testimony. Many facts corroborating the evidence of habitual use were proven. The evidence that the railroad company acquiesced in this use is furnished by the engineer himself, who testified upon that fact as follows:

"From Smetana crossing I was keeping a lookout for persons or anything else on the track; that is my duty."

The language used in the charge was warranted by the evidence. The tenth assignment is overruled.

[9] The eleventh assignment complains that a portion of the charge omitted to instruct upon the duty of deceased to use ordinary care to avoid being injured. Inasmuch as the charge in another paragraph correctly stated that ordinary care was required of deceased, its omission from the portion of the charge attacked is not error. The eleventh assignment is overruled.

[10] The twelfth assignment also attacks a portion of the court's charge. The proposition is made that deceased was a trespasser, and that therefore the railroad company was not guilty of negligence in killing him. The criticism is not tenable. In the first place, the evidence does not show that deceased was a trespasser. In the second place, if he were a trespasser, it was the duty of the appellant to exercise care not to kill him. Davies v. Mann, 152 English Rep. 588; Railway v. Watkins, 88 Tex. 20, 29 S. W. 232; Street's Shearman & Redfield, vol. 1, § 99; vol 2, § 484; Railway v. Broomhead, 140 S. W. 820; Railway v. Jaramilla, 180 S. W. 1126.

The thirteenth, fourteenth, fifteenth, and sixteenth assignments urge error in the charge for the reason that the issue submitted was not pleaded or not supported by testimony. The assignments are elaborately and ably presented, but are all overruled because there was both appropriate pleading and sufficient evidence to require the issue complained of submitted to the jury. The thirteenth, fourteenth, fifteenth, and sixteenth assignments are overruled.

[11] By the seventeenth assignment appellant contends that the court erroneously instructed the jury to determine the issue of whether or not the negligence of deceased was the proximate cause of the injury, and erroneously instructed them that, if so, then to find for the appellant. Appellant seems to insist that if deceased violated the rules of the company, or was drunk, or was a trespasser, that the railroad company could kill him, unless it was proven that appellant's operatives actually discovered the peril of deceased, and then, after discovery, were negligent in not avoiding the accident. The contention is not in accordance with the law. Such a doctrine was expressly repudiated in the first case we have been able to find reported on the subject. Davies v. Mann, 152 English Reports, 588; Railway v. Watkins, 88 Tex. 20, 29 S. W. 232; Railway v.

Symkins, 54 Tex. 615, 38 Am. Rep. 632; Railway v. Jaramilla, 180 S. W. 1126; Railway v. Broomhead, 140 S. W. 820. The rule is that if appellant's locomotive was operated along its railroad track negligently, and this negligence was the proximate cause of the injury, then appellant is liable for damages, notwithstanding deceased may have been guilty of negligence in being where he was. Whether or not this particular engine at that time was negligently operated is a question of fact to be determined by the jury from all the circumstances in evidence; and whether or not this negligence of the appellant was the proximate cause of the injury is an issue of fact to be likewise determined by the jury. The seventeenth assignment is overruled.

The eighteenth, twentieth, and twenty-first assignments all complain of various portions of the main charge for reasons all akin to those already herein disposed of. The eighteenth, nineteenth, twentieth, and twenty-first assignments are overruled.

By the twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, twenty-ninth, and thirtieth assignments complaint is made because the trial court refused special instructions requested by appellant. All of these special instructions required the jury to return a verdict for appellant, for which reason none should have been given.

Assignments 22 to 30, inclusive, are overruled.

The thirty-first assignment contends that the judgment is not supported by the evidence. We believe that appellant's counsel is under a misapprehension of the effect of the evidence as applied to the law of this case. The thirty-first assignment is overruled.

The judgment is affirmed.